FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 11, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA R., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 1:18-CV-03201-JTR <br><br> ORDER GRANTING, IN PART, PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 13, 17. Attorney D. James Tree represents Melissa R. (Plaintiff); Special Assistant United States Attorney Lars Joseph Nelson represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, IN PART,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 1

**REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on November 9, 2013 and May 29, 2014, respectively, alleging disability since November 15, 2012, due to bipolar disorder, PTSD, arthritis, nerve pain in her right leg, tenosynovitis in her right wrist, and swelling of her left knee. Tr. 88, 286. The applications were denied initially and upon reconsideration. Tr. 144-51, 156-66. Administrative Law Judge (ALJ) Stephanie Martz held a hearing on September 7, 2017, Tr. 37-85, and issued an unfavorable decision on November 24, 2017, Tr. 15-30. Plaintiff requested review from the Appeals Council. Tr. 274-75. The Appeals Council denied Plaintiff's request for review on August 16, 2018. Tr. 1-5. The ALJ's November 2017 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on October 16, 2018. ECF No. 1, 5.

## STATEMENT OF FACTS

Plaintiff was born in 1976 and was 36 years old as of her alleged onset date. Tr. 29. She has a GED and an Associate's degree. Tr. 48. Her work history has consisted of a number of short-term jobs, including fast food, care giving, sales, and general labor. Tr. 28, 324. She had a substance abuse problem until attending chemical dependency treatment in early 2014. Tr. 537-39. Over the duration of her claim, she has received treatment for her mental health conditions, in addition to undergoing two knee surgeries and carpal tunnel release surgery. Tr. 1230, 1233, 1236.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035,

1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) the claimant

can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 24, 2017, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 18.

At step two, the ALJ determined Plaintiff had the following severe impairments: bipolar disorder versus depression, personality disorder, substance abuse disorder, bilateral knee osteoarthritis, status post internal fixation of the left medial tibial plateau fracture and left knee arthroscopy with partial medial meniscectomy, status post right knee arthroscopy, obesity, seronegative arthritis, and status post right carpal tunnel release. *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 18-20.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light exertion level work with the following limitations:

> she can stand and/or walk up to 4 hours in an 8-hour workday with regular breaks for about 1 hour at a time. She has unlimited ability to push/pull within these exertional limitations. She can occasionally balance, stoop, kneel, crouch/squat, and crawl but cannot climb stairs, ladders, or hills. She needs to avoid concentrated exposure to extreme cold and hazards. She can understand, remember, and carry out simple and detailed tasks and have occasional or superficial contact with coworkers and should work independently, not on team or

> tandem tasks. She should work away from the general public. She needs a routine and predictable work environment.

Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform her past relevant work. Tr. 28.

At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, she was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, including the jobs of router, small products assembler, and inspector hand packager. Tr. 29-30.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date, November 15, 2012, through the date of the decision, November 24, 2017. Tr. 30.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) failing to assess any manipulative limitations in the RFC; (2) failing to properly assess Listings 1.02 and 1.06; (3) improperly assessing the medical opinion evidence; and (4) not fully crediting Plaintiff's subjective allegations.

## DISCUSSION

**1. Manipulative limitations**

Plaintiff argues the ALJ erred in failing to include any limitations in the RFC to account for Plaintiff's severe right carpal tunnel syndrome. ECF No. 13 at 4-5.

At step two of the sequential evaluation process, the ALJ considers and identifies the claimant's severe impairments, defined as those impairments that significantly limit the claimant's physical or mental ability to do basic work

activities. 20 C.F.R. §§ 404.1520(c), 415.920(c). In formulating the residual functional capacity, the ALJ must consider the claimant's remaining ability to do physical and mental work activities on a sustained basis, considering all of the claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is the most the claimant can still do despite her limitations. *Id.*; *see also* Social Security Ruling 96-8p.

At step two, the ALJ found one of Plaintiff's severe impairments to be "status post right carpal tunnel release," acknowledging that "the record confirms the above impairments significantly limit the claimant's ability to perform basic work activities." Tr. 18. However, the RFC contains no limitations on Plaintiff's ability to use her right hand for manipulative activities. Tr. 20. The RFC therefore appears inconsistent with the ALJ finding this impairment to be severe.

Defendant argues the ALJ reasonably excluded hand limitations from the RFC because Plaintiff's right hand and wrist issues resolved after her carpal tunnel release surgery. ECF No. 17 at 4-5. This argument fails to resolve the internal inconsistency in the ALJ's decision. If an impairment is found severe, by definition it causes some limitations on the individual's ability to perform work activities, and thus must be accounted for in the RFC. If the ALJ determined Plaintiff's carpal tunnel syndrome caused no functional limitations, then she should have found it to be a non-severe impairment.

Furthermore, Plaintiff did not undergo carpal tunnel surgery until January 2015, over two years after her alleged onset date. Tr. 1236. The relevant period for this claim began with Plaintiff's alleged onset date in November 2012. In September 2012, prior to the alleged onset date, Plaintiff reported having had right wrist pain for over a year. Tr. 484. She continued to periodically report difficulties with her right hand and wrist over the next two years, with exams showing diminished strength and nerve conduction studies demonstrating moderate carpal tunnel syndrome. Tr. 443, 475, 653, 1172. She reported worsening

symptoms in early January 2015, Tr. 1179, and finally had release surgery at the end of January 2015. Tr. 1236. Defendant's argument that the record demonstrates resolution of this impairment after the surgery does not cure the ALJ's failure to account for it in the RFC prior to the surgery. An ALJ must consider all evidence, including changes to a claimant's conditions with treatment or the passage of time, in determining whether a finding of disability is or was warranted for any of the relevant period. A condition need not be permanent to be severe or disabling; it simply "must have lasted or be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§404.1509, 416.909. In some cases, evidence may support the establishment of a closed period of disability, when the evidence demonstrates medical improvement. *See generally*, *Attmore v. Colvin*, 827 F.3d 872 (9th Cir. 2016). On remand, the ALJ shall reconsider the evidence and determine whether Plaintiff's carpal tunnel syndrome caused any work-related limitations, and if so, for how long.

**2.     Medical opinion evidence**

Plaintiff argues the ALJ erred by improperly assessing the medical opinion evidence. ECF No. 13 at 8-16. Specifically, she asserts the ALJ improperly rejected opinions from two consultative examiners for the Washington State Department of Social and Health Services, Dr. Carolyn Jackson and Dr. Thomas Genthe. *Id.*

When an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set

forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

   *a. Dr. Jackson*

Plaintiff underwent a consultative exam with Dr. Carolyn Jackson on August 12, 2015. Tr. 762-74. Dr. Jackson diagnosed Plaintiff with left knee osteoarthritis, right knee pain post-surgery, history of right tibial shaft fracture, low back pain, depression, hypertension, and history of meth abuse in remission. Tr. 763. Based on the severity of these impairments, Dr. Jackson opined Plaintiff was severely limited and unable to meet the demands of even sedentary work. Tr. 764.

The ALJ gave this opinion little weight, finding other treatment notes to indicate improvement in Plaintiff's knee pain with injections, and that bilateral knee surgeries performed "shortly after this visit" were successful in relieving symptoms. Tr. 26. The ALJ concluded, "while the claimant had a short period of more significant knee problems, the problems substantially improved after the surgeries, rendering this assessment less persuasive." *Id.*

Plaintiff asserts the ALJ erred in her analysis because the record did not support the finding of contemporaneous improvement with injections, and the bilateral knee surgeries occurred 11 and 16 months after the opinion was given, indicating the duration was much longer than the ALJ implied. ECF No. 13 at 10.[2]

---

[2] Plaintiff also asserts the ALJ erred by failing to offer any reasons for discounting Dr. Jackson's limitations as they related to Plaintiff's depression. ECF No. 13 at 9. However, Dr. Jackson did not assess any work-related functions pertaining to depression. Tr. 762-64. An ALJ need only "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Because Dr. Jackson did not opine as to any limitations related to depression, there was no opinion on this subject for the ALJ to discuss.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 8

Defendant argues the ALJ's finding of improvement is supported by substantial evidence. ECF No. 17 at 14-17.

The consistency of an opinion with the medical record in general is a relevant factor for an ALJ to consider. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). However, a review of the record shows that the ALJ's analysis is not supported by substantial evidence.

The context of the cited records does not demonstrate any sustained improvement from injections. The ALJ referenced Exhibit 18F/112 (contained in this record at Tr. 783). The record reflects a July 23, 2015 office visit with Dr. Kennedy, at which a third and final injection was administered to Plaintiff's knee. Plaintiff reported the first two injections "helped a little bit, but not as much as she would have liked." Tr. 783. Six days later, at her exam with Dr. Jackson, Plaintiff reported the injection was "not working well." Tr. 768. The following day Plaintiff returned to Dr. Kennedy's office, and as the Visco supplementation had not worked well in her left knee, they proceeded with prescribing an unloading knee brace for her right knee. Tr. 786. Records following this all indicate the injections had not worked well and that she had "failed" conservative treatments. Tr. 926, 934, 1043, 1204. In August 2015 Plaintiff reported receiving relief from her right leg pain with her unloader brace, but continued to report left knee pain. Tr. 1198. In December 2015 she reported her knee pain was stable and she began walking a lot more without her brace, but in January she began using it again due to worsening pain. Tr. 849, 869. The ALJ's characterization of the record showing "improvement with injection and treatment" is not supported by substantial evidence.

Similarly, the ALJ's finding that Dr. Jackson's opinion was less persuasive due to Plaintiff substantially improving after surgery is not a specific and legitimate reason for discounting the opinion. Plaintiff began reporting significant knee pain in mid-2014. Tr. 587, 590, 648, 653. In the August 2015 opinion, Dr.

Jackson stated Plaintiff had been markedly to severely limited by her impairments, including her knee problems, since mid-2014. Tr. 762. Plaintiff did not undergo her left knee surgery until July 2016, Tr. 1233, followed by her right knee surgery in December 2016. Tr. 1230. The ALJ's characterization of Plaintiff having "a short period of more significant knee problems" and her surgery as "shortly after this visit with Dr. Jackson" is not consistent with the record. Dr. Jackson's opinion applied to Plaintiff's condition for more than one year, and Plaintiff did not experience significant improvement from surgery for almost a year after the opinion was given. As discussed in the preceding section, the ALJ must consider the entire record, including periods of worsening or improving conditions, as well as the possibility of a closed period of disability.

On remand, the ALJ shall reconsider Dr. Jackson's opinion in the context of the entire record.

### b. Dr. Genthe

Plaintiff underwent a consultative psychological exam with Dr. Thomas Genthe in April 2014. Tr. 561-65. Dr. Genthe diagnosed borderline personality disorder, major depressive disorder with anxious distress, and substance use disorder. Tr. 563. He found Plaintiff was severely impaired in her ability to communicate and perform effectively in a work setting, complete a normal workweek without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting. Tr. 564. He also noted several other mild and moderate limitations. *Id.* He concluded she was unlikely to function adequately in a work setting until her psychological symptoms were managed more effectively. Tr. 565.

The ALJ gave this opinion little weight, noting Plaintiff had primarily complained of physical problems at this appointment and had demonstrated improvement in her mental health following this exam. Tr. 26-27. The ALJ additionally found Dr. Genthe's opinion that Plaintiff was "unlikely to function

adequately" was vague, and that the opinion did not meet the duration requirement. Tr. 27.

Plaintiff asserts the record does not support the ALJ's interpretation of the report and the accompanying mental health treatment records. ECF No. 13 at 12-16. Defendant argues the ALJ's interpretation of the record is supported by substantial evidence. ECF No. 17-20. Because this claim is being remanded on other bases, the ALJ will reconsider the medical record as a whole, including Dr. Genthe's opinion.

**3.    Plaintiff's subjective statements**

Plaintiff contends the ALJ erred by improperly rejecting her subjective statements. ECF No. 13 at 16-21.

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other

evidence in the record. Tr. 21. The ALJ offered the following reasons for disregarding Plaintiff's subjective complaints: (1) Plaintiff made inconsistent statements about her symptoms; (2) her testimony was not consistent with medical evidence of record; (3) she had long periods with no mental health treatment; (4) she was able to care for her own activities of daily living. Tr. 21-26.

An ALJ may consider inconsistent statements by a claimant in assessing the reliability of her reports. *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). However, merely asserting that a claimant made inconsistent statements without identifying what the inconsistencies are does not constitute a clear and convincing reason. The ALJ stated Plaintiff offered inconsistent statements about her symptoms, but failed to identify any actual inconsistencies in the record. The fact that an individual experienced fluctuations in her symptoms over a five year period is insufficient to establish inconsistency that calls into question the reliability of her reports.

A claimant's daily activities may support an adverse credibility finding if the activities contradict her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, the mere fact that a claimant is capable of performing some basic daily activities needed for everyday survival does not necessarily detract from her overall credibility. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). The Ninth Circuit has repeatedly found that the ability to perform some basic activities is not necessarily inconsistent with disability:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison*, 759 F.3d at 1016; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

The ALJ failed to identify any specific daily activities that she found to be inconsistent with Plaintiff's allegations of pain and other limitations. In the five-page summary of the medical evidence, the ALJ only vaguely refers to Plaintiff's ability to "care for her own activities of daily living" without identifying what those activities consisted of.[3]

While an ALJ may consider the fact that the extent of treatment sought by an individual is not comparable to the degree of limitation alleged, she must first consider possible reasons the claimant may not have sought more treatment. Social Security Ruling 16-3p. Such reasons can include lack of resources or access to treatment, symptoms reaching a tolerable level, the claimant being able to structure her day to avoid aggravating symptoms, or the conditions themselves

---

[3] The ALJ makes one reference to Plaintiff "babysitting five young children daily" in June 2014. Tr. 25. However, the record shows only that Plaintiff was complaining about her sister-in-law "dumping" her children on Plaintiff, who then had to be in charge of the children when her own mother was away. Tr. 625-26. Plaintiff found the stress and frustration of this overwhelming. Tr. 625. There is no evidence of the ages of the children, what Plaintiff's responsibilities were, how often this happened, or how long this arrangement continued. Within two weeks of reporting this event to her counselor, Plaintiff had moved out of her parents' home. Tr. 620. This minimal evidence does not constitute substantial evidence of Plaintiff's daily activities. *See Trevizo v. Berryhill*, 871 F.3d 664, 681 (9th Cir. 2017) ("the mere fact that she cares for small children does not constitute an adequately specific conflict with her reported limitations.").

interfering with seeking more treatment. *Id.* The ALJ did not discuss whether she considered any of these factors before finding Plaintiff's level of mental health treatment to be inconsistent with the severity alleged. There are some indications in the record that Plaintiff's physical impairments overwhelmed her and interfered with her ability to attend mental health counseling more frequently, and at least once Plaintiff indicated a desire to get back into counseling and was slowly taking the necessary steps. Tr. 614-17, 757. The Ninth Circuit has noted that "it is questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Furthermore, the treatment records must be viewed in light of the overall diagnostic record. *See Holohan v. Massanari,* 246 F.3d 1195, 1205-1208 (9th Cir. 2001); *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1200-01 (9th Cir. 2008).

Because none of the ALJ's other reasons satisfy the clear and convincing standard, a lack of support from the medical records alone is an insufficient basis. Furthermore, given the above-mentioned errors in the ALJ's interpretation of the record in context, reconsideration of Plaintiff's subjective complaints is warranted.

**4.     Step three findings**

Plaintiff argues the ALJ erred at step three when she failed to explain why Plaintiff's conditions did not meet listing 1.02A or 1.06. ECF No. 13 at 5-8.

A claimant is considered disabled at step three when her impairment meets the durational requirement or equals an impairment listed in Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir.1990); *Lewis*, 236 F.3d at 512.

At step three the ALJ found Plaintiff's knee impairment and leg fracture did not meet the criteria for Listing 1.02A or 1.06 "because she did not lose the ability to ambulate effectively, as defined in 1.00B2b." Tr. 19. An inability to ambulate effectively means:

> an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.00B2b. The definition goes on to give examples of abilities that demonstrate effective ambulation. *Id.*

Plaintiff argues the ALJ failed to explain why Plaintiff's knee condition does not meet the criteria. Plaintiff identifies a number of records that indicate she had impairment of her gait and needed various assistive devices. ECF No. 13 at 5-8.

ORDER GRANTING, IN PART, PLAINTIFF'S MOTION . . . - 15

Because this claim is being remanded on other bases, the ALJ is directed to complete the five-step evaluation process and offer an explanation for her findings at each step of the process.

## CONCLUSION

Plaintiff argues the ALJ's decision should be reversed and remanded for the payment of benefits. The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the Court finds that further development is necessary for a proper determination to be made.

The ALJ's RFC determination is not supported by substantial evidence in this case and must be reevaluated. On remand, the ALJ shall reevaluate the medical evidence and Plaintiff's subjective complaints, formulate a new RFC, obtain supplemental testimony from a vocational expert, if necessary, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. An application for attorney fees may be filed by separate motion.

1    The District Court Executive is directed to file this Order and provide a copy
2 to counsel for Plaintiff and Defendant.  Judgment shall be entered for Plaintiff and
3 the file shall be **CLOSED**.
4    **IT IS SO ORDERED.**
5    DATED September 11, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE